Samuel SLAVSKY and Edward
Slavsky, Plaintiffs,

v.

The NEW YORK CITY POLICE DE-
PARTMENT; The City Of New York;
Howard Safir, Police Commissioner Of
The City Of New York And Chairman,
Police Pension Fund, Article Ii; And
Board Of Trustees, Police Pension
Fund, Defendants.

No. 96 Civil 6800(JGK).

United States District Court,
S.D. New York.

June 16, 1997.

**118**

Jeffrey Brown, Julie Altman, Leeds & Morelli, Carle Place, NY, for Plaintiffs.

Paul A. Crotty, Corporation Counsel of City of New York, by Marta B. Soja, Assistant Corporation Counsel, New York City, for Defendants.

KOELTL, District Judge:

### OPINION AND ORDER

The plaintiffs, Samuel and Edward Slavsky, retired as New York City police officers and were subsequently employed by the New York City Board of Education. Section 1117 of the New York City Charter prevents them from receiving their police pensions while simultaneously receiving compensation for employment by New York State or New York City. The plaintiffs have sued New York City and the Police Pension Fund under 42 U.S.C. § 1983 alleging that the defendants acting under color of state law have denied to them their constitutional rights to equal protection of the laws and to substantive and procedural due process. The plaintiffs and the defendants have both moved for judgment on the pleadings under Fed. R.Civ.P. 12(c).

### I.

On a motion to dismiss, the factual allegations of the complaint are to be accepted as true and all reasonable inferences are construed in the plaintiff's favor. *See Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995); *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994). When reviewing a Rule 12(c) motion for judgment on the pleadings, the Court applies the same standards as on a Rule 12(b)(6) motion. The Court "must view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party." *Davidson v. Flynn,* 32 F.3d 27, 29 (2d Cir.1994); *Madonna v. United States,* 878 F.2d 62, 65 (2d Cir.1989); *see also National Ass'n of Pharmaceutical Mfrs., Inc. v. Ayerst Labs.,* 850 F.2d 904, 909 n. 2 (2d Cir.1988) (indicating that the Court treats a motion for judgment on the pleadings as if it were a motion to dismiss). A court should dismiss a complaint only "if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80, (1957)).

### II.

There is no dispute with respect to the following material facts. The plaintiffs Samuel and Edward Slavsky retired from the New York City Police Department on ordinary disability retirements in January, 1977, and December, 1980, respectively. (Verified Compl. ¶¶ 12, 15.) Thereafter, both commenced employment as teachers with the New York City Board of Education in 1983, and 1989, respectively. (Verified Compl. ¶¶ 13, 16.) As a result of an audit of the New York City Police Pension Fund in 1992, the City Comptroller discovered that the plaintiffs were receiving disability pensions from the Police Pension Fund and receiving salaries from New York City as a result of their employment as teachers in violation of New York City Charter § 1117.

In or about December, 1992, the plaintiffs were notified of the suspension of their police pensions effective January 1, 1993. (Verified Compl. ¶ 19.) The plaintiffs filed a Verified Complaint on September 9, 1996, alleging deprivations of their constitutionally protected rights to equal protection of the laws, procedural due process, and substantive due process.

### III.

■ The plaintiffs claim that the distinction made by § 1117 of the New York City

Charter between City retirees who obtain public sector employment and City retirees who obtain private sector employment is irrational and therefore violates their right to equal protection of the laws guaranteed by the Fourteenth Amendment. Section 1117 provides:

> If a person receiving a pension or a retirement allowance made up of such pension and an annuity purchased by the pensioner from the city or any agency, or out of any fund under the city or any agency by reason of such person's own prior employment by the city or any agency, shall hold and receive any compensation from any office, employment or position under the state or city or any of the counties included within the city or any municipal corporation or political subdivision of the state, except the offices of inspector of election, poll clerk or ballot clerk under the election laws or commissioner of deeds or notary public or jury duty, the payment of said pension only shall be suspended and forfeited during and for the time such person shall hold and receive compensation from such office, position, or employment; but this section shall not apply where the pension and the salary or compensation of the office, employment, or position amount in the aggregate to less than one thousand eight hundred dollars annually.

Unless a statute "employs a classification that is inherently invidious or that impinges on fundamental rights, areas in which the judiciary then has a duty to intervene in the democratic process," the Court exercises only a limited review power over the representative body through which the public makes democratic choices among alternative solutions to social and economic problems. *Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080–81, 67 L.Ed.2d 186 (1981). Economic legislation, such as New York City Charter § 1117, is entitled to a strong presumption of constitutionality, and will be upheld so long as it bears any rational relation to a legitimate state objective. *See id.* at 238, 101 S.Ct. at 1084–85; *Mathews v. De Castro,* 429 U.S. 181, 184, 97 S.Ct. 431, 433–34, 50 L.Ed.2d 389 (1976); *Poggi v. City of New York,* 109 A.D.2d 265, 273, 491 N.Y.S.2d 331, 337 (1st Dep't 1985).

The burden rests on the plaintiffs to show that § 1117 has no rational basis, that the classifications it draws are wholly irrelevant to the achievement of the City's legitimate objectives. *See Schweiker,* 450 U.S. at 234, 101 S.Ct. at 1082–83; *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970); *Western & S. Life Ins. Co. v. State Bd. of Equalization,* 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981); *McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961). Economic legislation "does not violate the Equal Protection Clause merely because classifications made by its laws are imperfect." *Dandridge,* 397 U.S. at 485, 90 S.Ct. at 1161. The Supreme Court has "consistently refused to invalidate on equal protection grounds legislation which it simply deemed unwise or unartfully drawn." *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 175, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980). The deference to the legislature embodied by the rational basis standard is "true to the principle that the Fourteenth Amendment gives federal courts no power to impose upon the states their views of what constitutes wise economic or social policy." *Dandridge,* 397 U.S. at 486, 90 S.Ct. at 1162.

Section 1117 has been in effect in various forms since 1901. It is similar to a provision of the New York State Civil Service Law, § 150, which similarly suspends certain state retirement benefits during public employment. On its face, § 1117 furthers the legitimate public purpose of limiting the total amount of benefits that any single retiree can obtain. Put another way, § 1117 prevents "double dipping" and suspends retirement benefits of those recipients with less need for them because those recipients are receiving active employment benefits from the government. Similarly, the effect of the provision is to increase the number of persons who can be paid from public funds.

The plaintiffs argue that the distinction in the statute which suspends pension benefits during public employment but not during private employment is irrational. They argue that the City must still pay a salary to

public employees such as teachers and that whether pensioners fill those jobs or not, the salaries must still be paid. They contend that the payment of a pension and a salary to the same person does not impose any additional cost on the City. But it is not irrational or arbitrary for the City to determine it will attempt to limit expenditures by limiting the amount that any individual person can obtain and that a pensioner with another public salary has less need for the pension. The City could also conclude that some pensioners would take public employment and thereby save the City pension expenses. The fact that the City also could have restricted pension payments for those who take private employment does not mean that it cannot limit expenditures for those whom the public fisc is liable for both the pension and the employment benefits.

The New York State courts have already rejected similar challenges. *See Baker v. Regan*, 68 N.Y.2d 335, 342, 509 N.Y.S.2d 301, 303, 501 N.E.2d 1192 (1986); *Brown v. New York State Teachers' Retirement System*, 107 A.D.2d 103, 107, 485 N.Y.S.2d 871, 874 (3d Dep't 1985). The plaintiffs in *Baker* instituted an Article 78 proceeding to challenge determinations made by the Comptroller under New York Civil Service Law § 150. *See id.*, 68 N.Y.2d at 340, 509 N.Y.S.2d at 302, 501 N.E.2d 1192. The Court upheld the Comptroller's determination that the plaintiffs, who were judges reelected for a second term to the Unified Court System, could not simultaneously receive retirement benefits for the first term and a salary for the new term in office. *See id.*, 68 N.Y.2d at 342, 509 N.Y.S.2d at 303, 501 N.E.2d 1192. The court explained that the state legislature has "for over a century evinced a strong public policy in favor of the suspension of retirement benefits of a person who after retiring accepts an office in the civil service of the state." *See id.*, 68 N.Y.2d at 341, 509 N.Y.S.2d at 302, 501 N.E.2d 1192. The legislature's intent in enacting § 150 was to prevent the practice of "double dipping." *Brown*, 107 A.D.2d at 107, 485 N.Y.S.2d at 874.[1] The legislature believed that "the receipt of retirement benefits

and salary at the same time ... could constitute an abuse of the public fisc." *Baker*, 68 N.Y.2d at 341, 509 N.Y.S.2d at 302, 501 N.E.2d 1192. Similarly, City retirees who subsequently become employed in the public sector present the same burden on the public fisc. The distinctions in § 1117, like those in N.Y. Civil Service Law § 150, are not arbitrary or irrational.

Accordingly, the plaintiffs' equal protection claims are dismissed.

## IV.

The plaintiffs also claim that § 1117 deprives them of their pension benefits without sufficient notice and without an opportunity to be heard and therefore violates their right to procedural due process guaranteed by the Fourteenth Amendment.

The constitutional right to due process requires that before an individual is deprived of life, liberty, or property, he will be provided with legally sufficient notice and "an opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). The plaintiffs have a protectable property interest in their city pension benefits under New York law. *See McDarby v. Dinkins*, 907 F.2d 1334, 1336 (2d Cir.1990). The only issue, therefore, is whether the notice and review procedures provided by the City are sufficient.

The plaintiffs received substantial notice of the restrictions imposed by section 1117. First, the pension check, of which the plaintiffs received and endorsed several before their benefits were suspended, indicates that, by endorsing the check, the recipient is certifying that he "is not in the employ of the State of New York or any municipal subdivision of the State of New York." (Soja Aff. Ex. 1.) Second, section 1117 itself provides notice of the suspension of pension benefits upon subsequent employment by New York State or New York City. Finally, the City periodically sends a notice in the mail advising Police Pension Fund retirees of restric-

---

1. The trial court's opinion and judgment in *Brown* also explicitly found that § 1117 was not a violation of equal protection. *See Brown*, Index No. 2254/84 (Sup.Ct. Albany County Feb. 13, 1984), at 4, attached as Exhibit A to Defendants' Memorandum of Law.

tions on employment after retirement. (Soja Aff. Ex. 2.) The plaintiffs claim that they never received this notice. (Samuel Slavsky Aff. ¶¶ 5, 7; Edward Slavsky Reply Aff. ¶¶ 5, 7.) However, they do not dispute endorsing the checks, and the checks and the City Charter alone provide sufficient notice to satisfy requirements of due process.

Due process also guarantees the right to be heard prior to the deprivation of a protected interest. *Mathews v. Eldridge,* 424 U.S. at 333, 96 S.Ct. at 901–02. In this case, however, the plaintiffs were not entitled to a formal pre-deprivation hearing. Due process does not require a formal hearing prior to deprivation when there are no questions of fact to be determined. *See Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977) ("But if the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute between an employer and a discharged employee which has some significant bearing on the employee's reputation."); *Brown,* 107 A.D.2d at 108, 485 N.Y.S.2d at 875–76 ("We agree with Special Term that no factual dispute exists and, therefore, plaintiff was not entitled to a hearing."); *see also Sandin v. R.D. Conner,* 515 U.S. 472, ——, 115 S.Ct. 2293, 2310, 132 L.Ed.2d 418 (1995) (Breyer, J. dissenting) ("Just as courts do not hold hearings when there is no 'genuine' and 'material' issue of fact in dispute between the parties, see Fed. Rule Civ. Proc. 56 (summary judgment), so the Due Process Clause does not entitle an inmate to additional disciplinary hearing procedure (such as the calling of a witness) unless there is a factual dispute (relevant to guilt) that the additional procedure might help to resolve.") (citing *Codd,* 429 U.S. at 627, 97 S.Ct. at 883–84). Here, the plaintiffs do not dispute the facts— their only claim is that the statute itself is unconstitutional.

Accordingly, the plaintiffs' procedural due process claims are dismissed.

#### V.

██ Finally, the plaintiffs claim that section 1117 arbitrarily denies former public employees of their right to receive pension benefits and therefore violates their right to substantive due process under the Due Process Clause of the Fourteenth Amendment.

Where, as here, an economic regulation is challenged, which does not impinge upon fundamental rights, the same rational basis test used to analyze claims under the Equal Protection Clause of the Fourteenth Amendment applies to the analysis of substantive due process claims. *See New York City Friends of Ferrets v. City of New York,* 876 F.Supp. 529, 533–34 (S.D.N.Y.), *aff'd,* 71 F.3d 405 (2d Cir.1995). As explained above, section 1117 is a rational legislative enactment to protect the public treasury.

Accordingly, the plaintiffs' substantive due process claims are dismissed.

#### CONCLUSION

For the reasons stated above, the defendants' motion for judgment on the pleadings is **granted.** The plaintiffs' motion for judgment on the pleadings is **denied.** The Clerk is directed to enter Judgment dismissing the complaint and closing the case.

**SO ORDERED.**