**Carroll B. STOIANOFF, Plaintiff,**

v.

**COMMISSIONER OF MOTOR VEHICLES, Defendant.**

**No. 97 CIV. 7226 CM.**

United States District Court, S.D. New York.

Aug. 4, 2000.

Carroll B. Stoianoff, Briarcliff, NY, pro se.

Bethann Gannon, NYS Dept. of Law, New York, NY, for Commissioner of Motor Vehicles.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

McMAHON, District Judge.

Defendant, Richard E. Jackson, Commissioner of the New York State Department of Motor Vehicles ("Commissioner Jackson") moves pursuant to Fed.R.Civ.P. 12(b)(6) for an order dismissing plaintiff's First Amended Complaint (the "Complaint") in its entirety. For the reasons stated below, the motion is granted.

Plaintiff *pro se*, Carroll B. Stoianoff ("plaintiff" or "Stoianoff"), brings this action for declaratory and injunctive relief pursuant to 28 U.S.C. § 1331. The gravamen of plaintiff's complaint is that, by requiring him to supply his social security number ("SSN") as a condition to renewing his driver's license, New York Vehicle and Traffic Law ("VTL") § 502(6)(a) violates the Privileges and Immunities Clause and the First, Fourth and Fourteenth Amendments to the United States Constitution, as well as the Freedom of Informa-

tion Act, 5 U.S.C. § 552(b)(6) ("FOIA"), the Privacy Act of 1974, 5 U.S.C. § 552(a) and the Tax Reform Act of 1976, 42 U.S.C. § 405(c)(2)(C)(i). Plaintiff also asserts state law claims for "bar and waiver" and tortious conversion.

As discussed below, plaintiff's federal statutory and constitutional claims lack merit. First, plaintiff's claims for alleged violation of FOIA and the Privacy Act of 1974 must be dismissed because neither statute provides for a private right of action against a state agency or official. However, even assuming, *arguendo*, that the Privacy Act of 1974 did permit actions against state agencies, plaintiff's claim fails because an amendment to the Social Security Act (codified as part of the Tax Reform Act of 1976) expressly authorizes States to require disclosure of SSNs in the administration of driver's license programs.

Second, plaintiff's constitutional claims are legally insufficient. The Complaint is devoid of any specific allegations of how Commissioner Jackson or VTL § 502 interfered with or infringed upon plaintiff's First Amendment right to free expression. Plaintiff is not contending that he was subject to an unreasonable search or seizure and he therefore has not stated a claim for violation of the Fourth Amendment. The Privileges and Immunities Clause does not authorize individuals to bring actions against their own states; therefore Mr. Stoianoff, a New York resident challenging a New York statute, has no recourse against the Commissioner under that provision of the Constitution. Finally, the mandatory disclosure of an individual's SSN does not threaten the sanctity of individual privacy so as to require constitutional protection. And Plaintiff's claim for alleged violation of procedural due process guaranteed by the Fourteenth Amendment should be dismissed because the legislative determination to amend VTL § 502 and require disclosure of SSNs as a condition to license renewal provided all the process that was due.

Last, because Mr. Stoianoff has failed to state any viable federal claim, this Court declines to exercise pendent jurisdiction over plaintiff's remaining state law claims for bar and waiver and tortious conversion. Instead, I dismiss the First Amended Complaint in its entirety.

## PROCEDURAL HISTORY

On this motion to dismiss, the pertinent facts alleged in the Complaint relating to plaintiff's age, marital status, lack of dependent children and dealings with the New York State Department of Motor Vehicles ("DMV") are assumed to be true.

On or about September 26, 1997, plaintiff commenced this action for a judgment (1) declaring that VTL § 502(6)(a) was void and unenforceable and (2) enjoining the Commissioner from refusing to renew plaintiff's license in the absence of a SSN. On or about October 20, 1997, defendant moved to dismiss plaintiff's complaint for lack of personal and subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), (2) and (5).

By Memorandum Decision and Order dated November 16, 1998, this Court granted defendant's motion to dismiss. The Court concluded that it lacked personal jurisdiction over the Commissioner because plaintiff had failed to effect proper service of process. In *dicta*, the Court remarked that plaintiff's complaint was "frivolous on its face" because the Social Security Act expressly permitted states to collect and use social security numbers for the purpose of administering driver's license laws, and the New York Vehicle and Traffic Law had been amended to conform to federal law.

Plaintiff appealed, and by summary order dated March 16, 2000, the United States Court of Appeals for the Second Circuit affirmed the district court's dismissal of plaintiff's complaint for lack of personal jurisdiction. The Court of Appeals held that the Commissioner had not been properly served, but indicated plain-

tiff was free to correct the jurisdictional defect by proper service of process on the Commissioner. Although the Court of Appeals acknowledged that plaintiff's allegations of unconstitutionality were frivolous, it chastised this Court for concluding that the complaint was "frivolous on its face" and directed that I determine certain issues of federal statutory law that the panel believed were presented by the Complaint.

On or about April 14, 2000, plaintiff served Commissioner Jackson with a copy of the First Amended Complaint. The Commissioner immediately moved to dismiss the action.

FINDINGS OF LAW

I. *Statutory Framework*

A. *The Privacy Act of 1974*

Congress passed the Privacy Act of 1974 (the "Privacy Act") in response to increasing concern over the federal government's accumulation of personal information. *See* Pub.L. No. 93–579, 88 Stat. 1896, 5 U.S.C. § 552a. The Senate Committee Report indicates the Privacy Act was formulated to "safeguard individual privacy" and "promote governmental respect for the privacy of citizens" by requiring departments and agencies of the federal government to observe certain rules and procedures relating to the collection, use and disclosure of an individual's personal information. *See* S.Rep. No. 1183, 93rd Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin. News, 6916.

The Privacy Act references FOIA for the applicable definition of the various federal agencies to which it applies. *See* 5 U.S.C. § 552(f). If a federal agency requires disclosure of an individual's SSN, the agency must inform the individual "whether that disclosure is mandatory or voluntary, by what statutory or other authority such number is solicited, and what uses will be made of it." 5 U.S.C. § 552a [reprinted in annotations].

A prohibition in the Privacy Act precluding federal, state or local government agencies from denying benefits or privileges to an individual based on that individual's refusal to disclose his social security account number appears in the historical annotations to the statute. *See* 5 U.S.C. § 552a. This provision of the Privacy Act was never codified. Because of the "lack of ready independent data about the probable costs and effects of such a prohibition," the section was deleted in Committee. *See* S.Rep. No. 1183, 93rd Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin. News, 6943.

B. *The Social Security Act*

As part of the Tax Reform Act of 1976, Congress amended the Social Security Act as follows to permit state governmental agencies to require disclosure of SSNs:

It is the policy of the United States that any State (or political subdivision thereof) may, in the administration of any tax, general public assistance, driver's license, or motor vehicle registration law within its jurisdiction, utilize the social security account numbers issued by the Secretary for the purpose of establishing the identification of individuals affected by such law, and may require any individual who is or appears to be so affected to furnish to such State (or political subdivision thereof) or any agency thereof having administrative responsibility for the law involved, the social security account number (or numbers, if he has more than one such number) issued to him by the Secretary.

42 U.S.C. § 405(c)(2)(C)(i) (The Tax Reform Act of 1976 § 1211(b), Pub.L. No. 94–455, 90 Stat. 1520, 1711–12). The amendment authorized any State to "use social security numbers for the purpose of establishing the identification of individuals affected by any law or program in its jurisdiction." House Report No. 94–658, 94th Cong., 2d Sess., reprinted in 1976

U.S.Code Cong. & Admin. News, 2897, 3820–21.

The 1976 amendment to the Social Security Act expressly addressed the terms of the Privacy Act. Any state department of motor vehicles that did not use the SSN for identification in accordance with a statute adopted prior to January 1, 1975 (including, *inter alia*, New York) was expressly authorized to do so. *See* 42 U.S.C. § 405(c)(2)(C)(vi). Also, Congress explicitly stated that, to the extent that any existing provision of federal law was inconsistent with the policy statement set forth in (i) of the amendment, such provision would become a nullity:

> If and to the extent that any provision of Federal law heretofore enacted is inconsistent with the policy set forth in clause(i), such provision shall, on and after October 4, 1976, *be null, void and of no effect.*

42 U.S.C. § 405(c)(2)(C)(v). (Emphasis added). Thus, to the extent that there was any inconsistency between Section 7 of the Privacy Act and the 1976 amendment to the Social Security Act, Congress expressly chose to void Section 7 of the Privacy Act.

Unlike the proposed provision of the Privacy Act that would have prohibited the states from denying any benefits or privileges to persons who refused to disclose their SSNs, the 1976 Social Security Act amendment *was* codified. It has been the law since 1976.

C. *New York Vehicle and Traffic Law § 502*

In 1995 the New York legislature amended the VTL to require that all individuals applying for or renewing a driver's license provide the DMV with their SSNs.[1]

Through the administration of the driver's license program, the State obtains SSNs to identify individuals who have failed to make child or spousal support payments and, where necessary, to suspend that person's driver's license. *See* VTL § 510(4–e). The amendment was enacted "to improve the economic well-being of children whose standard of living is eroded by lack of adequate income from absent parents with economic means" by authorizing the DMV to suspend a license when a party is in arrears on support payments. *See* N.Y. Laws, Ch. 81, §§ 209, 210, Summary of Legislation 1995 (Senate) 7–21.

New York State also participates in the National Driver Register pursuant to the National Driver Register Act of 1982. *See* Pub.L. No. 97–364, 96 Stat. 1747. Reports pertaining to individuals who have been denied a driver's license for cause, have had a license suspended or revoked for cause or have been convicted of certain motor vehicle-related offenses are submitted to the Secretary of Transportation as part of the National Driver Register. *See* 49 U.S.C. § 30304(a). Such reports contain, for identification purposes, the SSN required by the DMV. *See* 49 U.S.C. § 30304(b).

The license renewal form issued by Commissioner Jackson after the amendment of VTL § 502 states that the SSN will be used "only for exchange with other jurisdictions and to invoke driver license sanctions for delinquent child/spouse support payments." (Cplt.¶ 3.)

D. *Limitations on DMV Disclosure of SSNs*

Federal and state law strictly limit the DMV's use of SSNs. The Social Security

---

1. VTL § 502(6)(a) provides, in pertinent part, as follows:

> A license issued pursuant to subdivision five of this section shall be valid until the expiration date contained thereon, unless such license is suspended, revoked or canceled. Such license may be renewed by submission of an application for renewal, the fee prescribed by law, proofs of prior licensing, fitness and acceptable vision prescribed by the commissioner, the applicant's social security number, and if required by the commissioner a photo image of the applicant in such numbers and form as the commissioner may prescribe ...

Act provides for the confidentiality and non-disclosure of SSNs and related records. *See* 42 U.S.C. § 405(c)(2)(C)(viii). DMV regulations provide that SSNs will not be made available to the public. *See* 15 N.Y.C.R.R. § 3.9(c).

Also, the Driver's Privacy Protection Act of 1994 ("DPPA") regulates the disclosure of personal information contained in DMV records by prohibiting the DMV from selling or redistributing a driver's personal information to individuals or businesses without the driver's affirmative consent. *See* 18 U.S.C. §§ 2721–2725. The DPPA prohibits the DMV or any of is officers, employees or contractors from "knowingly disclosing or otherwise making available to any person or entity personal information about any individual obtained by the [DMV] in connection with a motor vehicle record." 18 U.S.C. § 2721(a).[2] The DPPA defines "personal information" as any information identifying an individual, including a SSN. *See* 18 U.S.C. § 2725(3).

## II. *Plaintiff Has Failed to State a Claim for Violation of the FOIA or Privacy Act*

■ Plaintiff's Second and Third Causes of Action allege that, by conditioning renewal of his driver's license on disclosure of his SSN, VTL § 502 constitutes an "unwarranted invasion of personal privacy" in violation of FOIA and the Privacy Act. As addressed below, both claims are legally insufficient.

### A. *There Is No Private Right Of Action Against A State Agency Under FOIA Or The Privacy Act*

Plaintiff has failed to state a claim under FOIA for two reasons. First, there is no private right of action to enjoin agency disclosures of information under FOIA. *See Chrysler Corp. v. Brown,* 441 U.S. 281,

99 S.Ct. 1705, 60 L.Ed.2d 208 (1979). Second, FOIA applies only to "agencies" as that term is defined under 5 U.S.C. § 551(1). The statute provides, in pertinent part, that the term "agency" refers only to "each authority of the Government of the United States, whether or not it is within or subject to review by another agency ..." *See* 5 U.S.C. § 551(1).

Thus, under FOIA, there is no private right of action against state agencies or officials. *See Grand Cent. Partnership, Inc. v. Cuomo,* 166 F.3d 473, 484 (2d Cir. 1999) (adopting view of other Circuits and most district courts in Second Circuit that FOIA applies only to federal and not to state agencies); *St. Michael's Convalescent Hosp. v. California,* 643 F.2d 1369, 1372–74 (9th Cir.1981) (refusing to apply FOIA to state agencies receiving federal funding and regulation); *Thomas v. Office of the United States Attorney for Eastern District of N.Y.,* 928 F.Supp. 245, 251 (E.D.N.Y.1996) (FOIA directed only to conduct of federal agencies); *Washington v. Police Dep't,* 1994 WL 455512, 1994 U.S. Dist. LEXIS 11717 (S.D.N.Y.) (refusing to apply FOIA to NYC Police Department); *Rankel v. Town of Greenburgh,* 117 F.R.D. 50, 54 (S.D.N.Y.1987) (refusing to apply FOIA to municipal corporations). The plain language of FOIA precludes its application to Commissioner Jackson. Plaintiff's claim under FOIA therefore fails.

■ The Privacy Act likewise does not apply to state agencies or officials because, as shown above, it incorporates the FOIA definition of "agency" as limited only to federal agencies. *See* 5 U.S.C. § 552a(g)(1) (providing that a private individual "may bring a civil action against the agency"); *Dittman v. State of California,* 191 F.3d 1020, 1026 (9th Cir.1999) (civil remedy provision of Privacy Act does not apply to action against state agency); *Unt*

---

**2.** Disclosure is permitted for use "by any government agency" or by "any private person or entity acting on behalf of a Federal, State or local agency in carrying out its functions." 18 U.S.C. § 2721(b)(1). The DPPA also al-

lows States to divulge drivers' personal information for any state-authorized purpose relating to the operation of a motor vehicle or public safety. *See* 18 U.S.C. § 2721(b)(14).

*v. Aerospace Corp.,* 765 F.2d 1440, 1447 (9th Cir.1985) (same); *St. Michael's Convalescent Hosp.,* 643 F.2d at 1372–74 (holding that the Privacy Act provides no private right of action against "state agencies or bodies"); *Pritzker v. City of Hudson,* 26 F.Supp.2d 433, 441 (N.D.N.Y.1998) (Privacy Act of 1974 provides certain privacy protections for records of individuals maintained by federal agencies and is inapplicable to state or local agencies); *Mamarella v. County of Westchester,* 898 F.Supp. 236, 237–8 (S.D.N.Y.1995) (action under Privacy Act is limited to federal agencies).

It is true that proposed Section 7(a)(1) of the Privacy Act (cited by the Second Circuit in its summary order)—which would have made it "unlawful for any Federal, State or local government agency" to deny any person a right or benefit based on that individual's refusal to disclose his SSN—fairly implies the existence of a private right of action. However, that provision was never codified. It remains in the statute only as an historical "note." *See* 5 U.S.C.A. § 552a [reprinted in annotations]; *see also supra* discussion at Part I.A.

By limiting the scope of the Privacy Act's civil remedy provision, Congress plainly intended to foreclose private actions against any entity other than federal agencies. *See* 5 U.S.C. § 552a(g). For this Court to hold otherwise would circumvent Congressional intent that the rights secured by the Privacy Act be enforceable only against federal agencies. Accordingly, plaintiff's claims for violation of both the Privacy Act and FOIA are dismissed.

B. *The Social Security Act Expressly Authorizes the DMV To Require Disclosure of Plaintiff's Social Security Number*

 Even assuming, *arguendo,* that the private right of action under the Privacy

Act did encompass actions against state agencies, it is the view of this Court that the Social Security Act was amended expressly to authorize the DMV to require disclosure of SSNs. *See* 42 U.S.C. § 405(c)(2)(C)(i). Congress also stated that any federal law that was in conflict with the amended Social Security Act would be null and void. *See* 42 U.S.C. § 405(c)(2)(C)(v). Because the uncodified Section 7(a)(1) of the Privacy Act conflicted with the policy statement contained in the 1976 amendment to the Social Security Act, it would have become "null and void and of no effect" as of October 1976, pursuant to 42 U.S.C. § 405(c)(2)(C)(v). Thus, the amendment of VTL § 502 in 1995 to require disclosure of SSNs did not violate the Privacy Act.[3]

Mr. Stoianoff's contention that the Commissioner has failed to address the ambiguities in state and federal laws identified by the Court of Appeals in its summary order is erroneous. In the view of the panel, the alleged ambiguity between the Privacy Act—specifically Section 7(a)(1) of that Act—and the 1976 amendment to the Social Security Act arose because Congress did not *mandate* that the States to require individuals to disclose their SSNs when applying for a driver's license; instead, it merely *permitted* the States to do so. However, the summary order made no reference to the language in the 1976 amendment that nullified any provision of any federal law that was inconsistent with a State's right to mandate disclosure of SSNs as a condition of obtaining a driver's license. It may be that the Second Circuit was unaware that Section 7(a)(1) of the Privacy Act was dropped in Committee, or of the nullification language contained in 42 U.S.C. § 405(c)(2)(C)(v), when it pre-

---

**3.** Furthermore, the DMV's license renewal form would comply fully with the requirements of Privacy Act section 7(b) by indicating that plaintiff's disclosure of his SSN was mandatory (i.e., "You *must* supply your social security number ..."); citing the statutory authority for the disclosure (i.e., VTL § 502); and identifying the limited purpose for which the SSN would be used (i.e., to invoke sanctions such as revocation of the driver's license, where necessary, in the collection of delinquent child/spouse support payments). *See* 5 U.S.C. § 552a [reprinted in annotations].

pared the summary order. In any event, the provision appears to have been dropped and the nullifying language does exist. In this Court's opinion, this clears up any latent or patent ambiguity.

### III. Plaintiff's Constitutional Claims Are Dismissed

Plaintiff's First Cause of Action alleges, *inter alia*, that by requiring that he disclose his SSN, VTL § 502 violates the First, Fourth and Fourteenth Amendments to the United States Constitution and "trespass[es] his privileges and immunities as a citizen of the United States." In its summary order, the Second Circuit appeared to agree with this Court's assessment that plaintiff's constitutional claims were "frivolous on [their] face." On the following grounds, each of these claims must be dismissed for failure to state any legally-cognizable claim.

### A. Plaintiff Fails to State a First Amendment Claim Because He Fails to Identify Any Conduct Interfering with His Right of Free Expression

██ In order to state a claim for violation of First Amendment rights, plaintiff must allege (1) conduct that is constitutionally protected, and (2) that the conduct was a motivating or substantial factor in causing action taken by the defendant on which the claim is based. *See Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

Here, the Complaint conclusorily asserts that VTL § 502 violates the First Amendment and denies Mr. Stoianoff "his right to free speech and petition." Plaintiff does not identify the constitutionally-protected conduct allegedly abridged by the statute. Moreover, VTL § 502 is not, on its face, a statute affecting or restricting speech or the exercise of First Amendment rights. Where, as here, the Complaint is devoid of

any specific allegations that Commissioner Jackson interfered with plaintiff's freedom of speech or infringed upon his First Amendment right of free expression, plaintiff's claim for violation of the First Amendment must be dismissed. *See McFadden v. Solfaro*, No. 95 Civ. 1148, 1998 WL 199923, 1998 U.S.Dist LEXIS 5765 (S.D.N.Y. Apr. 23, 1998) (First Amendment claim dismissed in absence of any evidence free speech had been curtailed).

### B. Plaintiff's Fourth Amendment Claim Is Dismissed

The Fourth Amendment states, in pertinent part, that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Mr. Stoianoff does not allege that he suffered from an unreasonable search or is he seeking to suppress evidence obtained by an unreasonable search. To · the extent plaintiff is complaining that disclosure of his SSN violates his right to privacy, the Supreme Court has opined that the "right of privacy" is founded in the Fourteenth Amendment concept of personal liberty, not the Fourth Amendment. *See Whalen v. Roe*, 429 U.S. 589, 599, 97 S.Ct. 869, 876 n. 23, 51 L.Ed.2d 64 (1977).[4] Thus, plaintiff's reliance on the Fourth Amendment is misplaced, and this claim is dismissed as well.

### C. Plaintiff Cannot Rely On The Privileges and Immunities Clause Because It Does Not Apply To Citizens Challenging Actions of Their Own States

██ Article IV, § 2, cl. 1, of the Constitution provides that the "Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." The Privileges and Immunities Clause does not provide citizens with new and independent rights, but "establishes a norm of comity" by which citizens of one

---

4. *See infra* discussion at Part D.

State coming into the jurisdiction of another are guaranteed equal treatment. The Clause does not permit individuals to pursue actions against their own states. *See Zobel v. Williams,* 457 U.S. 55, 59 n. 5, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982) (Privileges and Immunities Clause "was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy"); *Bradwell v. State of Illinois,* 16 Wall. 130, 83 U.S. 130, 138, 21 L.Ed. 442 (1872)("the protection designed by that clause . . . has no application to a citizen of the State whose laws are complained of"). As a citizen of New York State challenging the legislative action of his own state, Mr. Stoianoff has no recourse to the Privileges and Immunities Clause. Plaintiff's claim under the Privileges and Immunities Clause therefore must be dismissed.

### D. *Plaintiff's Fourteenth Amendment Claim Is Dismissed*

Plaintiff's Fourth Cause of Action conclusorily alleges that it is grounded on plaintiff's right under the Fourteenth Amendment to "procedural due process." Plaintiff also claims that the 1976 amendment to the Social Security Act and VTL § 502 are "impermissibly vague and overbroad" and they fail to provide "constitutional safeguards" for his privacy.

The constitutional right to privacy embodies solely "those personal rights that can be deemed fundamental or implicit in the concept of ordered liberty." *Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973). The activities embraced by this definition relate to the intimate facets of an individual's personal life, including marriage, procreation, contraception, family relationships, child rearing or education. *See Paul v. Davis,* 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976); *Jaffess v. Secretary, Dept. of Health, Ed. & Welfare,* 393 F.Supp. 626, 629 (S.D.N.Y.1975).

Plaintiff claims constitutional protection from disclosure of his social security number, but his claim is not based on any contention that disclosing the SSN will "restrict his freedom of action in a sphere contended to be private." *Paul,* 424 U.S. at 713, 96 S.Ct. 1155. The mandatory disclosure of an individual's SSN to DMV does not threaten the sanctity of individual privacy so as to require constitutional protection. *See McElrath v. Califano,* 615 F.2d 434, 441 (7th Cir.1980) (contention that disclosure of social security number violates right to privacy "has been consistently rejected"); *Claugus v. Roosevelt Island Hous. Mgmt Corp.,* No. 96 Civ. 8155, 1999 WL 258275, 1999 U.S.Dist LEXIS 6162 (S.D.N.Y Apr. 29, 1999) (no constitutionally-protected privacy interest in an individual's SSN).

In any event, any harm from the alleged loss of privacy Mr. Stoianoff may suffer as a result of disclosing his SSN to the DMV would be minimal. DMV regulations provide that SSNs will not be made available to the public. *See* 15 N.Y.C.R.R. § 3.9(c). The license renewal form states that the SSN will only be used "for exchange with other jurisdictions and to invoke driver['s] license sanctions for delinquent child/spouse support payments" and "will not be given to the public or appear on any form or information request." The Social Security Act and the DPPA also prohibit the DMV from disclosing Mr. Stoianoff's social security number without his affirmative consent. *See* 42 U.S.C. § 405(c)(2)(C)(viii); 18 U.S.C. §§ 2721–2725.

Thus, based on the limited circumstances in which the DMV is permitted to release an individual's SSN, plaintiff's fears that disclosure will lead to the discovery of other private data have very little foundation. *Cf. Walls v. City of Petersburg,* 895 F.2d 188, 194 (4th Cir. 1990)("When there are precautions to prevent unwarranted disclosure [of information held by a government agency], an individual's privacy interest is weakened."). Indeed, so stringent are New York's nondisclosure provisions that Mr. Stoianoff need fear disclosure only if he has violated

the law. But in his papers opposing the motion to dismiss, he assures this Court that he is neither a criminal nor a deadbeat dad. Thus, Plaintiff should have nothing whatever to worry about. His SSN will never be disclosed to anyone.

■ In order to allege a violation of his due process rights, Mr. Stoianoff must establish, as a threshold matter, that he suffered a deprivation of a constitutionally-protected liberty or property interest. *See Board of Regents v. Roth*, 408 U.S. 564, 570–71, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), holding limited by *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Gagliardi v. Village of Pawling*, 18 F.3d 188, 193 (2d Cir.1994). It is settled that a driver's license is a property interest protected by the Fourteenth Amendment's due process clause. *See Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).

However, "the deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)(Emphasis added). States are free to amend vehicle and traffic laws to impose preconditions to license renewals just as they can grant immunity or eliminate welfare or employment programs; without running afoul of the due process clause.

In *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), the Supreme Court, in upholding a California statute granting officials immunity from certain types of state tort claims, acknowledged that the grant of immunity did deprive plaintiffs of a property interest, but also determined that they were not deprived of property without due process, just as a welfare recipient is not deprived of due process when the legislature adjusts benefit levels. *See Martinez*, 444 U.S. at 281–82, 100 S.Ct. 553; *U.S. Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 174,

101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980); *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 575, 99 S.Ct. 802, 805, 59 L.Ed.2d 1 (1979); *Flemming v. Nestor*, 363 U.S. 603, 609–610, 80 S.Ct. 1367, 1371–1372, 4 L.Ed.2d 1435 (1960); *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 312, n. 8. 315–316, 65 S.Ct. 1137, 1141, n. 8, 1142–1143, 89 L.Ed. 1628 (1945).

Similarly, here, the New York legislature's amendment of VTL § 502 to require disclosure of SSNs provided all the process that was due. *See Bi–Metallic Investment Co. v. State Bd. of Equalization*, 239 U.S. 441, 445–46, 36 S.Ct. 141, 142–43, 60 L.Ed. 372 (1915). Indeed, in *Martinez*, the Supreme Court recognized that it "remain[s] true that the State's interest in fashioning its own rules is paramount to any discernible federal interest, except perhaps an interest in protecting the individual citizen from state action that is wholly arbitrary or irrational." *Martinez*, 444 U.S. at 282, 100 S.Ct. at 557; *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432–33, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

There is a rational relationship between the State's interests and VTL § 502. First, VTL § 502 was changed to create stronger enforcement measures in the area of child and spousal support by using SSNs to identify delinquent parties and, where necessary, suspend their driver's license. The statute is rationally related to New York State's legitimate interest in locating the whereabouts of errant parents for purposes of carrying out child and spousal support programs.

Second, as evidenced by the detailed and comprehensive statutory provisions which govern driver's licenses, Commissioner Jackson has a strong, legitimate interest in the effective and proper administration of the State's driver's license system. Congress essentially recognized the strength of that interest when, by amendment to the Social Security Act, it authorized states to use SSNs for identification pur-

poses in the administration of driver's license laws. *See* 42 U.S.C. § 405(c)(2)(C)(i). To promote motor vehicle and public safety, the DMV shares this information with the Secretary of Transportation as part of the National Driver Register.

In amending VTL § 502 to require disclosure of SSNs, the legislature did not carve out any exceptions or authorize Commissioner Jackson to make any exceptions. The fact that Mr. Stoianoff alleges that he now has no children and no child or marital support obligations is irrelevant. Indeed, it would have been irrational for the legislature to authorize the DMV to make individual case-by-case determinations of who is capable of fathering a child or being divorced each time a driver's license is renewed in this State. Rational basis analysis does not require that the method of regulation be narrowly tailored. *See Martinez,* 444 U.S. at 283, 100 S.Ct. at 558. Because VTL § 502 does not violate procedural due process and is rationally related to a legitimate state interest, plaintiff's procedural due process claims are dismissed.

Defendant does not dispute that the driver's license issued by the DMV to Mr. Stoianoff constitutes a property interest protected by the Due Process Clause. (*See* Def. Br. at 21.) But that does not mean that VTL § 502 deprives him of this property interest without due process of law because, contrary to his contention, due process does not guarantee him a hearing. (*See* Pl. Br. at 12.) "Due process is flexible and calls for such procedural protections as the particular situation demands." *Gilbert v. Homar,* 520 U.S. 924, 930, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997) (internal quotations and citations omitted). Here, no evidentiary hearing was required prior to the DMV's denial of plaintiff's license renewal because there were no disputed issues of fact that required examination. "Due process does not require a formal hearing prior to deprivation when there are no questions of

fact to be determined." *Slavsky v. New York City Police Dep't.,* 967 F.Supp. 117, 121 (S.D.N.Y.1997); *see also Gilbert,* 520 U.S. at 933, 117 S.Ct. 1807 (there is "no need for any process since there would be nothing to consider at the hearing except [an] independently verifiable fact"); *Codd v. Velger,* 429 U.S. 624, 627–628, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (where plaintiff made only the most limited attempt to dispute factual issue, he had not raised issue relating to substantial accuracy of finding and Fourteenth Amendment did not require hearing); *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)(Breyer, J., dissenting) (Due Process Clause does not entitle an individual to additional hearing unless there is factual dispute that additional procedure might help resolve).

Plaintiff concedes that he did not comply with VTL § 502(6)(a). Specifically, he states that he refused to disclose his SSN to the DMV on the license renewal form. *See* Cplt. ¶¶ 4, 5. VTL § 502 mandates denial of the renewal for failure to disclose the SSN. Denial is automatic under the statute; there is no discretion granted to the DMV regarding whether to deny renewal. Denial, moreover, is only effective until the readily determinable requirement, i.e., disclosure of the SSN, is met. Thus, because there are no factual issues in dispute that require adjudication at a hearing, plaintiff has failed to state a claim for violation of his right to procedural due process of law.

E. *Plaintiff Has Not Asserted a Valid Claim for Violation of the Free Exercise Clause of the U.S. Constitution*

■ The Complaint does not include any claim for violation of the right to religious freedom guaranteed by the First Amendment. However, plaintiff refers to a "Memorandum of Law dated October 31, 1997" and challenges VTL § 502 for imposing unconstitutional sanctions "contrary to his religious beliefs." Pl. Br. at 16–17.

Apparently, what Mr. Stoianoff posits is that, by authorizing the confiscation of the driver's licenses of absentee parents, most of whom are poor, urban males, the statute deprives them of a means to secure employment and thus constitutes a "scheme for sanctions against the poor," contrary to plaintiff's purported "religious beliefs." Mr. Stoianoff's concern for the poor is commendable, but the extent plaintiff's submission can be construed to allege a claim for violation of religious freedom, he stands on unsound legal footing.

A rationally-based, neutral state law of general applicability does not violate the right to free exercise of religion, even though the law may incidentally burden a particular religious practice or belief. *See Employment Div. v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (right of free exercise does not relieve obligation to comply with valid, neutral law because law proscribes (or prescribes) conduct that religion prescribes (or proscribes)). In *Smith,* the Supreme Court held that Oregon could, consistent with the Free Exercise Clause, prohibit sacramental peyote use and thus deny unemployment benefits to individuals discharged for such use. *See Smith,* 494 U.S. at 890, 110 S.Ct. 1595. The state's capacity to enforce a universally applicable regulation designed to address socially harmful conduct and carry out other aspects of public policy "cannot depend on measuring the effects of a governmental action on a religious objector's spiritual development." *Smith,* 494 U.S. at 885, 110 S.Ct. 1595.

There is nothing in VTL § 502 to suggest an antagonism by the legislature toward religion in general or a particular religious belief. All applicants for the renewal of a New York State driver's license must provide their SSN. VTL § 502 is facially neutral; it does not have the object of burdening religion; it does not have more than an incidental effect on religious practices or beliefs. Finally, VTL § 502 is rationally related to New York State's legitimate interests in locating the whereabouts of errant parents for purposes of carrying out child support programs.

"Given the diversity of beliefs in our pluralistic society and the necessity of providing governments with sufficient operating latitude, some incidental, neutral restraints on the free exercise of religion are inescapable." *Bowen v. Roy,* 476 U.S. 693, 712, 106 S.Ct. 2147, 90 L.Ed.2d 735 (1986)(Burger, C.J., plurality) (foreshadowing the *Smith* analysis when rejecting a free exercise challenge to the requirement that applicants for a federal welfare program provide SSNs). As a matter of legislative policy, a state may decide to make religious accommodations to a law of general and neutral application, but this Court's concern "is not with the wisdom of legislation but with its constitutional limitation." *Braunfeld v. Brown,* 366 U.S. 599, 608, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961)(plurality opinion). Thus, under the Supreme Court's holding in *Smith,* VTL § 502, a valid and neutral law applicable to all New York State licensed drivers, does not violate the Free Exercise Clause of the First Amendment. *See Miller v. Reed,* 176 F.3d 1202, 1207 (9th Cir.1999)(claim that California statute requiring DMV to obtain SSN of all applicants for renewal of drivers' licenses violated Free Exercise Clause dismissed for failure to state a claim).

### IV. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims

Plaintiff asserts that under principles of "bar and waiver," the legislature is prohibited from amending the VTL to require disclosure of SSN and claims that Commissioner Jackson is liable for tortious conversion because DMV personnel wrote the word "VOID" on plaintiff's check for the license renewal fee before returning it to him.

As set forth above, plaintiff's federal claims against Commissioner Jackson are legally insufficient and fail to state a claim upon which relief can be granted. This

Court, therefore, declines to exercise pendent jurisdiction over plaintiff's remaining state law claims. *See United Mine Workers of Amer. v. Gibbs,* 383 U.S. 715, 716, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Diamond v. Am–Law Publ'g Corp.,* 745 F.2d 142, 148 (2d Cir.1984).

## CONCLUSION

This Court continues to adhere to its originally-expressed views about Mr. Stoianoff's complaint—all of it. The pleading fails under well-known and long-settled standards of statutory and constitutional jurisprudence. Accordingly, it is dismissed in its entirety, with prejudice as to the Federal claims and without prejudice as to the State claims. Mr. Stoianoff's cross-motion for summary judgment, which this Court deferred pending issuance of the instant opinion, is now moot.

This constitutes the decision and order of the Court.