*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0023p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DANIEL A. SCHMITT,

> *Plaintiff-Appellant,*

> *v.*

THE CITY OF DETROIT, a Michigan municipal
corporation; LORETTA NEAL, Former Income Tax
Director of the CITY OF DETROIT; MARK VANN,
Former Assistant Income Tax Director of the CITY
OF DETROIT; JAMES FLORKOWSKI, Manager I of the
CITY OF DETROIT; BRYANT JENKINS, Principal
Accountant of the CITY OF DETROIT; and T.W.
GRAPHICS,

> *Defendants-Appellees.*

No. 03-1884

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-74719—Anna Diggs Taylor, District Judge.

Argued: November 30, 2004

Decided and Filed: January 14, 2005

Before: NORRIS and COOK, Circuit Judges; BECKWITH, Chief District Judge.[*]

---

## COUNSEL

**ARGUED:** John C. Signorino, WEINER & COX, P.L.C., Southfield, Michigan, for Appellant.
Linda D. Fegins, CITY OF DETROIT LAW DEPARTMENT, Detroit, Michigan, for Appellees.
**ON BRIEF:** Elizabeth C. Thomson, WEINER & COX, P.L.C., Southfield, Michigan, for
Appellant. Linda D. Fegins, CITY OF DETROIT LAW DEPARTMENT, Detroit, Michigan, for
Appellees.

---

[*]The Honorable Sandra S. Beckwith, Chief United States District Judge for the Southern District of Ohio, sitting
by designation.

---

## OPINION

---

ALAN E. NORRIS, Circuit Judge.  Plaintiff Daniel Schmitt received a mailing from the City of Detroit concerning his 2001 income tax obligation.  The vendor hired by the City to print these mailings included the recipient's social security number on the envelope.  Plaintiff filed suit against the City under § 7(b) of Privacy Act of 1974 ("the Privacy Act"), Pub. L. 93-579, 88 Stat. 1896, on behalf of himself and other similarly situated individuals.[1]  After the City agreed to include disclosure notices in future requests for social security numbers, the district court granted declaratory relief under the Privacy Act and dismissed all remaining claims pursuant to Fed. R. Civ. P. 12(b)(6).  On appeal, plaintiff contends that he is entitled to money damages, attorney's fees, and costs.  Because we hold that the Privacy Act applies solely to federal agencies, plaintiff failed to state a federal claim and, as a consequence, his complaint should have been dismissed *in toto.*

As do the federal government and the State of Michigan, the City relies on a person's social security number for tax identification purposes, as permitted by the Internal Revenue Code, 26 U.S.C. § 6109(d) ("The social security account number issued to an individual for purposes of section 205(c)(2)(A) of the Social Security Act shall, except as shall otherwise be specified under regulations of the Secretary, be used as the identifying number for such individual for purposes of this title.").  In 2001, the City contracted with T.W. Graphics to print, address, pre-sort, and deliver income tax forms for mailing.  The mailing label included the taxpayer's social security number. When this mistake came to light, Mayor Kwame Kilpatrick wrote a letter of apology to the aggrieved taxpayers, promising to "take the necessary steps to prevent such an unwelcome event in the future."

Plaintiff's initial complaint was filed on November 26, 2002, ten months after the mayor's apology.  The complaint was amended the following January.  Section 7(b) of the Privacy Act, which is the claim at the heart of this appeal, provides as follows:

> Any Federal, State, or local government agency which requests an individual to disclose his social security account number shall inform that individual whether that disclosure is mandatory or voluntary, by what statutory or other authority such number is solicited, and what uses will be made of it.

Pub. L. 93-579, 88 Stat. 1909, 5 U.S.C. § 552a (2004) (note**).**

Throughout this litigation, plaintiff has relied upon this provision for the proposition that local governmental entities, such as the income tax division of the City, are subject to the Privacy Act.  However, the language of § 7(b) suggesting that state and local agencies fall within its ambit is at odds with another crucial definition of the Privacy Act, as codified at 5 U.S.C. § 552a. Specifically, the Privacy Act defines the term "agency" with reference to the Freedom of Information Act ("FOIA").  See 5 U.S.C. § 552a(a)(1) (referencing FOIA definition of agency found at 5 U.S.C. § 552(e), subsequently re-designated at § 552(f)).  Section 552(f) provides "'agency' as defined in section 551(1) of this title includes an executive department, military department, Government corporation, Government controlled corporation, or other establishment in the

---

[1] Plaintiff also sued former City income tax division employees, Loretta Neal and Mark Vann; Bryant Jenkins, the City's principal accountant; James Florkowski, a City manager; and T.W. Graphics, the vendor who produced the offending mailings.  The amended class action complaint included state law negligence, emotional distress and invasion of privacy claims.  The district court declined to exercise supplemental jurisdiction over plaintiff's state law claims and dismissed them without prejudice.  They are not before us on appeal.

executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency . . . ." 5 U.S.C. § 552(f)(1). Section 551(1) of Title 5, in turn, defines "agency" as "each authority of the Government of the United States . . . ." In short, the Privacy Act, albeit by reference, unambiguously defines the term "agency" as an agency of the federal government.

The district court looked to these statutory definitions and held that "[t]he City is not an agency under any statutory definition" and therefore is "not properly subject to the requirements of § 7(b) of the Privacy Act." *Schmitt v. City of Detroit*, 267 F. Supp.2d 718, 722 (E.D. Mich. 2003). Other courts have likewise concluded that the Act applies only to federal agencies. *See Polchowski v. Gorris*, 714 F.2d 749, 752 (7th Cir. 1983) ("the bill, as originally introduced, contained a remedy for improper disclosures by state authorities; these provisions were deleted, however, because of the uncertain effect of such a provision and because Congress felt that it lacked the necessary information for devising a remedial scheme in this context") (citing 1974 U.S. Code Cong. & Adm. News at 6933-34) (footnote omitted); *Stoianoff v. Comm'r of Motor Vehicles*, 107 F. Supp.2d 439, 442 (S.D.N.Y. 2000) (observing that § 7(b) was "never codified"); *see also* J.M. Zittler, Annotation, *What is Agency Subject to Privacy Act Provisions*, 150 A.L.R. Fed. 521, 530 (1998) ("The statutory definition of 'agency' would appear to be referring to federal agencies only") (collecting cases); *but see Greater Cleveland Welfare Rights Org. v. Bauer*, 462 F. Supp. 1313, 1319-20 (N.D. Ohio 1978) (inferring a right of action for prospective relief under § 7(b) against a county welfare department).

Despite the importance of this issue to the resolution of the appeal, in their briefs to this court, neither party focused upon the interplay between § 7(b) of Pub. L. 93-579 and the codified definition of agency found at 5 U.S.C. § 552a(a)(1). Rather, plaintiff simply assumed that § 7(b) controls while the City focused on the codified statute rather than upon the public law. That being the case, we start with basic principles. First, it is the Statutes at Large that "shall be legal evidence of laws." 1 U.S.C. § 112. By contrast, the United States Code shall "establish prima facie the laws of the United States." 1 U.S.C. § 204(a). Thus, even if a portion of Pub. L. 96-579, which appears in the Statutes at Large at 80 Stat. 1896, were omitted from the United States Code, it would retain the force of law. *United States Nat. Bank of Oregon v. Indep. Ins. Agents of America, Inc.*, 508 U.S. 439, 448 (1993); *see generally* Abner J. Mikva & Eric Lane, *Legislative Process,* 89-92 (Aspen Law & Business 2d ed. 2002). However, that general principle gives way when a title of the United States Code has been enacted into positive law by Congress; when that happens, "the text thereof shall be legal evidence of the laws therein contained." 1 U.S.C. § 204(a); *National Bank of Oregon*, 508 U.S. at 448 n.3. Congress enacted Title 5 as positive law in 1966. Pub. L. 89-554, 80 Stat. 378.

Given that Title 5 has the force of positive law, the viability of § 7(b) is premised upon whether it was codified. It was, albeit as a note to 5 U.S.C. § 552a. *See* 5 U.S.C. § 552a (Congressional Findings and Statement of Purpose). We are therefore confronted by two provisions of the Privacy Act that contradict one another to some degree: the statutory definition, which unambiguously contemplates that the Privacy Act applies exclusively to federal agencies, and § 7(b), which by its terms includes state and local agencies within its ambit.

When faced with statutory sections that are inherently inconsistent, our first duty is to reconcile the competing provisions so that they can both remain in effect. *See Daniel v. Cantrell,* 375 F.3d 377, 383 (6th Cir. 2004); *petition for cert. filed* (U.S. Oct. 4, 2004) (No. 04-6822); *Anderson v. Yungkau*, 153 F.2d 685, 688 (6th Cir. 1946) (dissent); *see generally* Singer, Norman, J. *Statutes and Statutory Construction* § 28:12 (West Group 6th ed. 2002). In this case, however, such a reconciliation is impossible. The statutory definition of an agency found at § 552a(a)(1) contains no language to indicate that it does not apply to the Privacy Act as a whole. Were we to hold that § 7(b) applies to state and local agencies, we would effectively say that an unambiguous definition of a core term, which itself was promulgated by Congress, Pub. L. 93-579 § 3, 88 Stat. 1897, applies only part of the time. This we will not do.

While we are hesitant to rely upon legislative history,[2] in this instance it overwhelmingly supports the view that the Privacy Act applies exclusively to federal agencies. Not only was § 7(b) of Pub. L. 93-579 included in the notes to 5 U.S.C. § 552a, so too was § 2, the "Congressional Findings and Statement of Purpose," which contains the following finding: "[T]he privacy of an individual is directly affected by the collection, maintenance, use, and dissemination of personal information by *Federal* agencies." Pub. L. 93-579, § 2(a)(1), 88 Stat. 1896 (emphasis added). In the same vein, Congress stated, "The purpose of this Act . . . is to provide certain safeguards for an individual against an invasion of personal privacy by requiring *Federal* agencies . . . to [*inter alia*] . . . be subject to civil suit for any damages which occur as a result of willful or intentional action which violates any individual's rights under this Act." Pub. L. 93-579 §2(b) (emphasis added). Furthermore, Senate Report 93-1183, which is dated September 26, 1974, contains the following discussion of the Privacy Act's application to entities beyond the federal government:

### COVERAGE: PRIVATE, STATE AND LOCAL

As reported, the bill applies to Federal personal information systems, whether automated or manual, and to those of State, local and private organizations which are specifically created or substantially altered through grant, contract or agreement with Federal agencies, where the agency causes provisions of the act to be applied to such systems or files or relevant portions.

As introduced, S. 3418 applied to all governmental and private organizations which maintained a personal information system, under supervision of a strong regulatory body, with provision for delegating power to State instrumentalities.

The Committee has cut back on the bill's original coverage and ordered the Privacy Commission to make a study of State, local and private data banks and recommend precise application of the Act where needed.

1974 U.S.C.C.A.N. 6916, *6932 -6933. At least one court has cited Senate Report 93-1183 in holding that the Privacy Act applies only to federal agencies. *Polchowski*, 714 F.2d at 752. If nothing else, the report indicates that Congress considered a broader application of the statute but held off pending further study. Finally, plaintiff cites us to nothing in the legislative history of the statute that would indicate that Congress viewed the dissemination of social security numbers differently than it did other records. *See* 1974 U.S.C.C.A.N. 6916, 6943-46 (discussing privacy concerns related to use of social security numbers but recognizing legitimate uses by entities other than the federal government and recommending further study by the Privacy Commission).

The fact that the Privacy Act contains a section that defines the term "agency" as including only those agencies that fall under control the federal government, coupled with a legislative history that supports such a reading of its scope, forces us to conclude that – notwithstanding the codification of § 7(b) – the Privacy Act applies exclusively to federal agencies. Because plaintiff cannot state a cause of action against the City, we hold that his suit was properly dismissed pursuant to Fed. R. Proc. 12(b)(6). To the extent that the district court granted declaratory relief under the Privacy Act, that portion of the court's order is reversed. The City may, for policy reasons, continue

---

[2]As Justice Jackson famously put it, "Resort to legislative history is only justified where the face of the Act is inescapably ambiguous, and then I think we should not go beyond Committee reports, which presumably are well considered and carefully prepared." *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 395 (1951) (concurrence). Justice Scalia has taken this skepticism about legislative history one step further, "The[] only mistake was failing to recognize how unreliable Committee Reports are – not only as a genuine indicator of congressional intent but as a safe predictor of judicial construction. We use them when it is convenient, and ignore them when it is not." *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 617 (1991) (concurrence).

to include disclosure notices when requesting social security numbers, but it is not required to do so under the Privacy Act.

The judgment of the district court memorialized by its Order Granting Declaratory Relief is **reversed** to the extent that it grants declaratory relief under the Privacy Act and **affirmed** in all other respects. The cause is **remanded** to the district court with instructions to **dismiss** the complaint for failure to state a claim.